**Elizabeth E. Howard, OSB #01295**
E-Mail: eeh@dunn-carney.com
Dunn Carney Allen Higgins & Tongue LLP
851 SW Sixth Avenue, Suite 1500
Portland, OR 97204
Telephone: (503) 224-6440
Facsimile: (503) 224-7324

Attorneys for Applicants Amicus-Intervenors

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

| | |
|---|---|
| **OREGON NATURAL DESERT ASS'N., OREGON NATURAL RESOURCES COUNCIL FUND, and NORTHWEST ENVIRONMENTAL DEFENSE CENTER,** | No. CV-06-523-HO |
| Plaintiffs, | **MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE** |
| v. | |
| **SHIRLEY GAMMON,** Lakeview District Manager, BLM, **THOMAS E. RASMUSSEN,** Lakeview Resource Area Field Manager, BLM, **ELAINE M. BRONG,** State Director, Oregon/ Washington BLM, **LYNN SCARLETT,** Secretary (Acting), United States Department of the Interior, **U.S. BUREAU OF LAND MANAGEMENT,** and **U.S. DEPARTMENT OF THE INTERIOR,** | |
| Defendants. | |

Laird Ranch, LLC, Dennis Flynn Ranch, Harvey Ranch, Inc., Crump Ranch, and Thomas and Karmen O'Leary Ranch (hereafter "Applicants") offer the following memorandum in support of their Motion for Amicus Curiae Status in the Liability Phase and to Intervene in the Remedial Phase of the above-captioned case.

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

## INTRODUCTION

Applicants seek to file an amicus brief on the issues raised by plaintiffs in this litigation and to participate as amicus at oral argument. Applicants also seek to fully intervene in the remedial phase of this litigation. Plaintiffs Oregon Natural Desert Association ("ONDA"), Oregon Natural Resources Council Fund, and Northwest Environmental Defense Center (hereafter "Plaintiffs") challenge defendant Bureau of Land Management's ("BLM") adoption of two final decisions. Plaintiffs challenge the Lakeview Resource Management Plan ("RMP") and the Beaty Butte Allotment Management Plan ("AMP"). Plaintiffs seek to have this Court declare the BLM's adoption of both of these actions a violation of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1784; the Public Range Improvement Act ("PRIA"), 43 U.S.C. §§ 1901-08; the Taylor Grazing Act ("TGA"), 43 U.S.C. §§ 315-315r; the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4361; and the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701 *et seq.*

## BACKGROUND

Applicants own ranches near the small communities of Plush, Adel, Paisley, and Silver Lake in Lake County, Oregon. Declaration of Jesse Laird on behalf of Laird Ranch (Laird Dec.), ¶ 1; Declaration of Dennis Flynn on behalf of Dennis Flynn Ranch (Flynn Dec.), ¶ 1; Declaration of Kent Clark on behalf of Harvey Ranch, Inc. (Clark Dec.), ¶ 1; Declaration of Edward D. Stabb on behalf of Crump Ranch (Stabb Dec.), ¶ 1; and Declaration of Thomas O'Leary on behalf of Thomas and Karmen O'Leary Ranch (O'Leary Dec.), ¶ 1. The Applicants all own or share interests in grazing permits issued by the BLM for grazing allotments within the Lakeview BLM District. (Laird Dec., ¶ 3; Flynn Dec., ¶ 3; Clark Dec., ¶ 3; Stabb Dec., ¶ 3; O'Leary Dec., ¶ 3.) Applicant Crump Ranch grazes within and holds a grazing permit for the Beaty Butte Allotment, a specific allotment at issue in this matter. (Stabb Dec., ¶¶ 3-4.) These allotments and permits are impacted by Plaintiffs' claims (*see, e.g.,* Laird Dec., ¶¶ 5-6, (explaining overlay and impact of ONDA's proposed wilderness study areas)), and will be significantly impacted by the remedy

issued in this case, if any. (Laird Dec., ¶¶ 5-8; Flynn Dec., ¶¶ 5-6; Clark Dec., ¶¶ 5-6; Stabb Dec., ¶¶ 5-6; O'Leary Dec., ¶ 5.) The Applicants' situations are representative of the approximately 75 grazing permit-holders impacted by this litigation.

A grazing permit is a 10 year permit issued by the BLM, which authorizes grazing on public lands within an "allotment" designated and managed for grazing livestock. 43 C.F.R. § 4130.2(a); 43 C.F.R. §4100.0-5. The Lakeview BLM District includes 120 allotments, including those grazed by Applicants. *See* Lakeview RMP and Record of Decision, p.8 (Table R-1). While not required by law, allotment management plans ("AMPs") may be developed by the BLM in careful and considered consultation, cooperation, and coordination with the permittees who graze their livestock in an allotment. 43 C.F.R. §4120.2. AMPs describe site-specific livestock grazing practices for a particular allotment, and the terms of an AMP become terms of the grazing permit. 43 C.F.R. §4120.2(a), (e).

In contrast to an AMP, an RMP (resource management plan) is a broad, landscape-level land use plan that generally establishes land areas for particular uses and special designations, allowable resources uses and related levels of production, resources condition goals and objectives, program constraints and general management practices, determinations as to the need to develop more detailed and specific plans, support actions needed to achieve these items, general implementation sequences, and standards for monitoring and evaluating the effectiveness of the plan. 43 C.F.R. §1601.0-5(n). RMPs are "designed to guide and control future management actions and the development of subsequent, more detailed and limited scope plans for resources and uses." 43 C.F.R. §1601.0-2. The Supreme Court has explained that RMPs are tools for projecting present and future use and are a preliminary step in the overall process of managing public lands. *Norton v. Southern Utah Wilderness Alliance*, 542 U.S. 55, 69-70 (2004) (*SUWA*). The Lakeview RMP is an overall look at the lands and goals for the Lakeview BLM District, in which are the public lands that the Applicants and many other ranches utilize under long-held grazing permits.

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE
\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

The Applicants' grazing permits authorize them to graze their livestock and remove a certain amount of forage (Animal Unit Months or "AUMs") within a certain allotment at certain times of year. (Laird Dec., ¶¶ 3-4; Flynn Dec., ¶ 4; Clark Dec., ¶ 5; Stabb Dec., ¶ 4; and O'Leary Dec., ¶ 4.) As is typical of Lake County ranches, the Applicants own "base property" where they raise forage or hay crops for supplemental income or supplemental winter feed for their livestock. These base lands, while a vital part of the overall ranch operations, are often only grazed for a small portion of the year by the livestock owned by these ranches. Leased state lands and federal grazing permits on the BLM and on U.S. Forest Service lands compose a substantial portion of the lands utilized by the ranches. Throughout a calendar year, livestock are rotated into different pastures as the forage and water conditions change and as the weather changes with the seasons of the year. (Laird Dec., ¶ 4; Flynn Dec., ¶¶ 4-5; Clark Dec., ¶¶ 5-6; Stabb Dec., ¶¶ 4-5; O'Leary Dec., ¶ 5.)

These pasture rotations are specifically designed to provide for healthy landscapes and healthy livestock. (*See, e.g.,* Stabb Dec., ¶ 5 (the rangelands are a healthy environment for the calves and herd during the spring); Laird Dec., ¶ 4 (flexibility in the rotations of pastures is needed to keep herds and lands healthy)). If even one portion of these lands is removed from the pasture rotation, the ranches are forced to choose between significant expense for replacement feed, or loss of livestock through forced sales, or a rotation that does not provide optimal results for the livestock and/or the environment. (Laird Dec., ¶ 7; Flynn Dec., ¶ 5; Clark Dec., ¶ 6; Stabb Dec., ¶ 5.) None of these options are satisfactory; however, more often than not, the ranches will choose to suffer financial harm rather than harm their livestock or the forage and environment they depend on. (Laird Dec., ¶¶ 7-8; Flynn Dec., ¶¶ 5-6; Clark Dec., ¶¶ 6-7; Stabb Dec., ¶¶ 5-6.)

This situation is particularly troubling when ranches are faced with a situation wherein they may be forced to choose between bad alternatives, but they have not done anything to warrant the imposition of the harm on their lives or livelihoods. Here, the Applicants are

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE

prepared to explain the legal and factual reasons why ONDA's proposed WSAs are not well-taken, and further why Plaintiffs' approach to NEPA alternatives is inappropriate and unnecessary in this case. Applicants are also prepared to address the reasons why Plaintiffs' claims with regards to the Taylor Grazing Act, PRIA, and FLPMA have no foundation in law. Furthermore, Applicants have clearly explained in the declarations, and will explain further herein, that the impacts of either a temporary or permanent injunction against grazing would be devastating and very harmful to them and their families.

## LEGAL STANDARD

A court has discretion to allow a party to appear as amicus in a litigated matter. In Oregon, grazing permittees have generally always been allowed to appear amicus in cases similar to this one. *See Oregon Natural Desert Ass'n et al v. Bureau of Land Management et al*, Civil No. 03-1017-JE, Order dated 3/19/2004 (Docket No. 38) (allowing grazing permittees to participate as amicus curiae) (*ONDA v. BLM*); *see also, Oregon Natural Resource Ass'n v. Shuford et al*, Civil No. 06-0242-AA, Order dated 9/8/2006 (Docket No. 101), p.21 (allowing grazing and recreational permit holders to participate in the liability phase as amicus curiae by submitting briefs and attending oral argument) (*ONDA v. Shuford*). Oregon District Court judges have exercised their discretion in favor of allowing grazing permittees to appear as amicus.

Federal Rule of Civil Procedure ("FRCP") 24(a) allows a party to intervene "as of right" under the following conditions: (1) the motion is timely; (2) the applicant asserts a "significantly protectable" interest relating to property or a transaction that is the subject matter of the litigation; (3) the applicant is so situated that the disposition of the action may, as a practical matter, impair or impede the interest asserted; and (4) the applicant's interest is inadequately represented by the parties. *Kootenai Tribe of Idaho v. Veneman*, 313 F.3d 1094, 1107 (9th Cir. 2001) (*Kootenai*). Applicants satisfy the requirements for intervention in the remedy phase, and, therefore, request rights as a full party in any settlement discussions, negotiations, or agreements,

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE
\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

and full rights as a party in the remedial phase of this case, if any.

## ARGUMENT

### I. APPLICANTS WILL PROVIDE A UNIQUE PERSPECTIVE THAT WILL ASSIST THE COURT IN ITS DECISION IN THIS MATTER.

Applicants seek amicus status during the liability phase of this case. Applicants offer a unique perspective that is not currently represented by the parties in this case. Applicants' businesses and livelihoods will be directly impacted by a decision on the issues presently before this Court. They hold grazing permits that would be directly impacted if a preliminary, temporary or permanent injunction were issued as requested by Plaintiffs. This gives Applicants a clear interest in seeing that the legal issues before the Court are thoroughly briefed, from all perspectives, during the liability phase, so that the Court has all viable arguments before it as it is trying to decide very important issues for the Applicants and the many families and ranches they represent. If the liability issues before the Court are decided against the BLM, this matter will proceed to the remedial phase and Applicants' interests will be at significant risk.

Applicants are also very concerned with ensuring that the Court has a thorough understanding of the legal validity and factual accuracy of points made by Plaintiffs in support of ONDA's efforts to create new wilderness study areas ("WSAs") within the Lakeview BLM District. (*See, e.g.,* Laird Dec., ¶ 8; Flynn Dec., ¶ 6; Clark Dec., ¶ 7.) Plaintiffs' frustration with the BLM regarding its determinations related to ONDA's review of wilderness values is the Plaintiffs' most important issue in this matter. *See* Plaintiffs' Memorandum in Support, p. 14 (Docket No. 30) ("ONDA's fundamental complaint about the Lakeview RMP concerns the BLM's management of public lands containing outstanding wilderness values.") Applicants' ranches depend on forage from permits that are for lands that ONDA claims the BLM should be re-inventorying and designating as WSAs. (Laird Dec., ¶¶ 5-6.) Having seen the negative impact of additional regulation that comes with special designations, Applicants are concerned about their allotments being are subsumed within the "proposed WSAs" sought by ONDA in this

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

matter. (Laird Dec., ¶¶ 5-6.) As such, Applicants want to make sure that the position against Plaintiffs' claims are fully briefed, and that the Court is completely aware of Plaintiffs' misapplication of the law and facts pertaining to this issue. Again, if this issue is not fully briefed by all impacted parties, and particularly is not briefed by those most directly impacted by these issues, Applicants respectfully suggest that the Court will not have all of the information it should have in order to make a thorough decision in the liability phase of this case. And, if the Court decides against the BLM in the liability phase, and this case proceeds to the remedial phase, then the Applicants' livelihoods will be at risk.[1]

For all of these reasons, Applicants seek amicus status in the liability phase of this proceeding. While Applicants will join the BLM in support of the Lakeview RMP and Beaty Butte AMP, they will make their own unique arguments about the claims in this case. Simply put, Applicants have significantly different considerations and concerns than those of the BLM. While the BLM will continue to exist and function regardless of the outcome of this proceeding, if the Applicants are enjoined from grazing, they will be significantly impacted, potentially having to liquidate their herds or lands or move out of the county. This fact alone means that Applicants have a much different, and arguably, a more vested, interest in the outcome of this proceeding than does BLM. Because of their unique concerns and situation, Applicants would offer a perspective that is not offered by the current parties and that will add depth and breadth to the legal analysis and factual issues provided to this Court.

While Applicants would normally request full intervention in a case such as this, given the status of this case, Applicants seek to participate only as amicus curiae in the liability phase of the case.[2] Amicus status has been granted to grazing permittees in a number of similar cases

_____

[1] This same reasoning is equally applicable to the other claims raised by Plaintiffs.

[2] Because of the extent of Plaintiffs' claims and the size of the Lakeview BLM District, there are approximately 75 permit holders impacted by the outcome of this case. The logistics of getting this group together to discuss involvement in this case was very difficult, and efforts to do so were significantly hampered by the timing of this case, which coincided with the busiest times of

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

in the District of Oregon. *See, e.g., ONDA v. BLM*, Civil No. 03-1017-JE (Order, Docket No. 38); *ONDA v. Shuford*, Civil No. 06-242-AA (Order, Docket No. 101). Amicus in Applicants' position have been allowed to participate in both the briefing and oral argument in other pending cases in the District Court of Oregon. *See, ONDA v. Shuford*, Civil No. 06-242-AA (Docket No. 101, p.21); *Oregon Natural Desert Ass'n v. Lohn*, Civil No. 06-949-KI (Docket No. 47) (granting amicus motion for oral argument) (*ONDA v. Lohn*). Applicants seek the same opportunity here.

Applicants do not seek to modify any dates presently scheduled by the Court. Therefore, if Applicants are allowed to participate, they are prepared to submit an amicus brief by Wednesday, February 21, 2007. This is approximately one month prior to the oral argument currently scheduled in this matter. Applicants would then suggest that the parties have up to the date the Federal Defendant's reply brief is due to respond to the amicus brief. Amicus are prepared to waive any opportunity to file a reply brief in order to ensure that there is no prejudice to the existing parties with regards to agreed-upon motion and argument dates.

If the parties were allowed to respond to the Amicus Brief on the same date that the

---

the year for Applicants and the large group of permittees they represent. Beginning in spring and continuing through late fall/early winter, Applicants and the larger group they represent were in the midst of making sure that crops were planted, tended, and harvested, that new calves were cared for, and that livestock were watered and moved through rangeland pastures at appropriate times to support rangeland health and the health of the herd. The onus of these activities falls on the shoulders of the ranch owner/manager and, if they are able to hire them, a few seasonal employees. Needless to say, the ranchers have a great deal of work on their plate during most of the time that this case has been before the Court. Just as the Applicants wrapped up their busiest time of year, they were in the midst of holidays, and found it nearly impossible to coordinate the logistics of getting the large group of permittees together to discuss involvement in this case. Frankly, throughout this time, this group did not understand the potential impact of a delay in seeking participation in this matter. They are not experienced in legal issues and in particular have not encountered the concern about a delayed request for participation in any prior case they have been involved in, if any. The group was finally able to get together to discuss this matter in late January, and at that time, was able to more thoroughly understand the case. They decided that it was very important to be as involved as possible in the case. After learning of the status of the case, Applicants voluntarily limited their request for involvement so as to minimize the impact of their delay on the case schedule and so as to avoid prejudice to the other parties.

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

federal defendants file their reply brief, they will have a little more than two weeks or up to

19 days to respond. (The later applies if the Defendants' January 26, 2007, Motion for Extension

of Time is granted.) This amount of time is longer than that normally provided by rule, and

given the current parties' familiarity with the legal issues and facts in this case, Applicants

respectfully suggest that this timeline will provide sufficient time for a response so as to avoid

any prejudice to the parties.[3]

For all of these reasons, Applicants seek the opportunity to appear as amicus in this

proceeding, and specifically to file one amicus brief on February 21, 2007, and to participate at

the oral argument scheduled for March 20, 2007.

## II.     APPLICANTS ARE ENTITLED TO INTERVENE AS OF RIGHT IN THE REMEDIAL PHASE.

Applicants seek to intervene in the remedial phase of this matter and to participate in any

settlement discussions and agreements as a full party.[4] Pursuant to FRCP 24(a), intervention as

of right is permissible upon timely application where:

> [T]he applicant claims an interest relating to the property or transaction which is
> the subject matter of the action and the applicant is so situated that the disposition
> of the action may as a practical matter impair or impede the applicant's ability to
> protect that interest, unless the applicant's interest is adequately represented by
> existing parties.

FRCP 24(a).

Pursuant to the above rule, the Ninth Circuit has developed the following four-part test

for determining whether an applicant may properly intervene as a matter of right: (1) the motion

is timely; (2) the applicant asserts a "significantly protectable" interest relating to the property or

a transaction that is the subject matter of the litigation; (3) the applicant is so situated that the

---

[3] Of course, it is possible that this issue is irrelevant, as the parties may choose not to file any
response to Applicants' amicus brief, as was the case in *ONDA v. Shuford*, Civil No. 06-242-AA.
[4] Applicants understand that this latter right is generally assumed to be part of the rights of a
party allowed to intervene in the remedial phase of a case. However, they wish to be clear as to
their request in this matter.

Page 9     MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE
           LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE

disposition of the action may as a practical matter impair or impede the interest asserted; and (4) the applicant's interest is inadequately represented by the parties. *Kootenai*, 313 F.3d 1094, 1107.

The Ninth Circuit has liberally construed intervention as of right in favor of potential intervenors. *Forest Conservation Council v. United States Forest Serv.*, 66 F.3d 1489, 1493 (9th Cir. 1995). The test is applied with an eye on practical considerations. "If an [applicant] would be substantially affected in a practical sense by the determination made in an action, he should, as a general rule, be entitled to intervene...." FRCP 24, Advisory Committee Note to 1966 Amendment. Further "[b]y allowing parties with a *practical* interest in the outcome of a particular case to intervene, we often prevent or simplify future litigation involving related issues; at the same time, we allow an additional interested party to express its views before the court." *U.S. v. City of Angels*, 288 F.3d 391, 398 (9th Cir. 2002) (emphasis in original).

Judges in the District Court of Oregon have routinely allowed grazing permittees to fully intervene in the remedial phase of cases such as the one before this court.[5] *See ONDA v. Shuford*, Civil No. 06-242-AA, (Order, p.21, Docket No. 101); *Oregon Natural Desert Ass'n v. U.S. Forest Service*, Civil No. 03-381-HA (Dec. 19, 2003) (Docket No. 37) (granting intervention in entire case); and *Oregon Natural Desert Ass'n v. U.S. Forest Service*, Civil No. 03-213-JO (July 9, 2003) (Docket No. 35) (granting intervention in entire case). ONDA has repeatedly supported this position in cases where grazing permittees have sought intervention. *See, e.g., ONDA v. Shuford*, Civil No. 06-242-AA (Docket No. 50). Furthermore, as outlined

---

[5] But for the status of current proceedings, Applicants would seek full intervention in this matter, both in the remedial and liability phases of this case. Applicants do not, by their request for partial intervention here, in any way intend to endorse or support recent decisions denying full intervention to grazing permittees. Nonetheless, for purposes of this case, Applicants focus their arguments solely on intervention in the remedial phase of this case.

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

below, Ninth Circuit case law supports intervention by grazing permittees in the remedial phase. Thus, the case law strongly supports intervention in cases such as the one before the Court.

### A. The Application for Intervenor Status is Timely.

Whether a motion for intervention is timely is based on the following factors: (1) the stage of the proceedings at which the intervenor applicant seeks to intervene; (2) the potential prejudice to other parties; and (3) the reason for and length of the delay in filing for intervenor status. *Smith v. Marsh*, 194 F.3d 1045, 1050 (9th Cir. 1999). In Smith, the proposed intervenors sought to intervene 15 months after the action had been commenced, and after several dispositive motions had been ruled upon. *Id.* At 1051. The length of the delay meant many substantive and procedural issues had been settled by the time of the intervention motion. *Id.* For these reasons, and others, the Ninth Circuit affirmed the trial court's finding that the motion to intervene was untimely. *Id.*

Admittedly, Applicants seek to intervene some time after the initiation of this case. However, a significant distinguishing factor here is that Applicants seek only to intervene in the remedial phase of this matter. That phase will not be at issue until after the court has made a decision on the liability issues presently before it. The parties are still filing briefs pertaining to the substantive issues in this case, and the hearing on the parties' cross-motions for summary judgment is not until March 20, 2007. As such, a request for intervention in the remedial phase, only, is timely in this instance.

Given the limited request for remedial intervention, no prejudice will come to any party as a result of Applicants' intervention in this matter. This application is timely within the meaning of FRCP 24(a).

### B. Applicants Have a Protectable Interest in Their Grazing Permits.

Applicants have a protectable interest warranting intervention in the remedial phase of

MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE

this matter. The Ninth Circuit has stated that when "the injunctive relief sought by plaintiffs will have [a] direct, immediate, and harmful effect upon a third party's legally protectable interests, that party satisfies the "interest" test of Fed.R.Civ.P. 24(a)(2). . . ," as is necessary to permit full intervention in the remedy phase. *Forest Conservation Council*, 66 F.3d 1489, 1494.

The interests the Applicants have in their grazing permits for the public lands at issue in this case are the types of protectable interests referred to in FRCP 24(a)(2). Applicants need not establish a "specific legal or equitable interest" to obtain intervenor status. *Forest Conservation Council*, 66 F.3d at 1493, *quoting Green v. United States*, 996 F.2d 973, 976 (9th Cir. 1993). More specifically, applicants for intervention do not need to show that their interests are property rights or that their rights are absolute, but merely that their interests are "protectable under some law." *Forest Conservation Council*, 66 F.3d at 1493 (applicants need only establish "significantly protectable interests" to intervene as of right). Furthermore, a "non-speculative, economic interest" can support intervention if the interest is "concrete and related to the underlying subject matter of the action." *United States v. Alisal Water Corp.* 370 F.3d 915, 919 (9th Cir. 2004).

The Applicants' interests in their grazing permits and their associated rights to graze the public lands at issue, are established and protected under the statutes that form the basis for Plaintiffs' claims in this case. Applicants' right to graze livestock on public lands is established and protected by provisions in FLPMA, 43 U.S.C. § 1752 (outlining terms and conditions for grazing leases and permits); PRIA, 43 U.S.C. § 1732 (authorizing issuance of permits to use public lands); and the Taylor Grazing Act, 43 U.S.C. § 315b (authorizing issuance of grazing permits). These statutes establish a scheme, applicable to public land livestock grazing, that authorizes the livestock grazing by the Applicants and other ranches impacted by this matter.

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

The Applicants' interests in their permits are protected by the Administrative Procedures Act ("APA"), the Taylor Grazing Act, and administrative regulations. Denials, revocations, and changes to permits are appealable and subject to judicial review under the APA. *Anchustegui v. Dep't of Agriculture*, 257 F.3d 1124, 1128-29 (9th Cir. 2001) (grazing permits cannot be revoked without notice and an opportunity to be heard); 43 C.F.R. Subpart 4160 (appeal procedures for decisions related to changes in permits). Permits must be adequately safeguarded by the government. *See* 43 U.S.C. § 315b ("So far as consistent with the purposes and provisions of this subchapter, grazing privileges recognized and acknowledged shall be adequately safeguarded. . . ."); *Anchustegui*, 257 F.3d 1124, 1129 *quoting* 43 U.S.C. §315b ("grazing privileges recognized and acknowledged shall be adequately safeguarded."); *Oman v. United States*, 179 F.2d 738, 742 (10 Cir. 1949) (government has "not merely a duty to refrain from the invasion of [permittee's] grazing privileges, but an affirmative obligation to adequately safeguard them"). Thus, it has been recognized that "whether they be called rights, privileges, or bare licenses, or by whatever name, while they exist [grazing permits] are something of real value. . .which have their source in an enactment of the Congress." *McNeal v. Seaton*, 281 F.2d 931, 934 (D.C. Cir. 1960), *quoting Red Canyon Sheep Co. v. Ickes*, 98 F.2d 308, 315 (D.C. Cir. 1938). Thus, the interests of the Applicants in their grazing permits are "significantly protectable interests" in the sense required by FRCP 24(a)(2).

The Applicants' interests in their permits are significant in that the permits are a necessary component of their ranches. As previously explained, these permits are absolutely necessary for Applicants to maintain their current operations. Without the full use of their permits, Applicants would be forced to significantly modify their operations, requiring them to sell livestock and their private lands, would suffer significant economic losses, would have to

move their operations to other counties, and, in some cases, would cease to be viable and have to close out their operations.

Here, Plaintiffs seek as relief: "such temporary, preliminary, and/or permanent injunctive relief as may be prayed for hereafter by Plaintiffs, including an order from the Court directing the BLM to eliminate or reduce livestock grazing on allotments, pastures, special management areas, and/or other areas of concern. . .until such time as the RMP has been adequately amended or supplemented. . . ." Complaint, Prayer for Relief, Paragraph F., p. 29. Plaintiffs' relief, if granted, would enjoin livestock grazing under Applicants' permits for an indeterminate amount of time. This remedy would have a direct, immediate, and harmful effect on the grazing permits within the Lakeview BLM district and thus, on the Applicants' "protectable interests" under FRCP 24(a). Thus, Applicants clearly satisfy the "interest" test articulated in *Forest Conservation Council*, in that their protectable interests will be directly and immediately harmed by the injunctive relief sought by Plaintiffs in this matter. *See Forest Conservation Council*, 66 F.3d 1489, 1494.

For all of these reasons, Applicants' interests in their grazing permits satisfies the requirements of FRCP 24(a).

C.     **The Outcome Of This Case Will Significantly Harm and Impair Applicants' Interests.**

Whether an intervenor's interest may be impaired is a practical inquiry. *See Kootenai*, 313 F.3d 1094, 1107. As explained above, Applicants' businesses will be directly and negatively impacted by either a permanent or temporary injunction.

If livestock grazing authorized by these permits is reduced or eliminated, even on a temporary basis, these ranches would have to eliminate significant portions of their herds or incur significant costs to obtain alternative feed in order to avoid damage to the private and other

Page 14  MEMORANDUM IN SUPPORT OF MOTION FOR AMICUS CURIAE STATUS IN THE
LIABILITY PHASE AND TO INTERVENE IN THE REMEDIAL PHASE
\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

state and federal rangelands on which they graze. There is no question that Applicants' interests will be impaired by the outcome of the remedial phase of this case.

**D.     Defendants Will Not Adequately Represent Applicants' Interests.**

An "applicant-intervenor's burden in showing inadequate representation is minimal: it is sufficient to show that representation may be inadequate." *Forest Conservation Council*, 66 F.3d at 1498 (emphasis in original). Even where the potential intervenor's interest in the issuance or administration of a specific regulation coincides with that of a regulatory agency, that coincidence does not alone establish that "adequacy of representation is ensured for purposes of rule 24(a)(2)." *Natural Resources Defense Council v. Costle*, 561 F.2d 904, 912 (D.D.C. 1977). Furthermore, "merely because parties share a general interest in the legality of a program or regulation does not mean their particular interests coincide so that representation by the agency alone is justified." *American Horse Protection v. Veneman*, 200 F.R.D. 153, 159 (D.D.C. 2001).

Applicants are not adequately represented in this case. The BLM does not share their concerns about the viability of their permits. This is not a slight on the BLM. However, the fact though is that the BLM could never have the same perspective as Applicants, because the BLM's "business" is not put at jeopardy in the same way that Applicants' businesses and livelihoods are put at jeopardy by this case. Applicants' livelihoods depend on the protection of their interests, whereas the BLM will continue to exist with or without the maintenance of grazing permits. In addition, the BLM is required to address a broad range of interests, and not only those of Applicants. *Forest Conservation Council*, 66 F.3d at 1499 (a federal agency is required to represent the broader public interest rather than the more narrow views of a proposed intervenor). As such, BLM cannot be expected to adequately represent Applicants. BLM's interests are too broad to do so. Simply put, Applicants have a different perspective, different

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC

risks and different interests than the BLM. As such, Applicants are not adequately represented in this matter and should be allowed to intervene in the remedial phase.

In sum, Applicants have timely sought intervention in the remedial phase of this matter. They have unique interests protected under federal law that will be impacted by the resolution of this matter. Applicants' interests are not necessarily aligned with the BLM and clearly do not align with the plaintiffs' interests. Thus, their interests warrant separate representation and recognition as intervenors in the remedial phase of this case.[6]

## **CONCLUSION**

For the reasons set forth above, Applicants respectfully request that they be allowed to appear as amicus during the liability phase of this matter, both by filing an amicus brief and presenting at oral argument. Applicants also request that they be allowed to intervene with full rights as a party in any remedial phase of this litigation (including settlement discussions and agreements) pursuant to FRCP 24(a).

Dated this 9th day of February, 2007.

DUNN CARNEY ALLEN HIGGINS & TONGUE LLP

/s/ Elizabeth E. Howard

Elizabeth E. Howard, OSB No. 01295
Telephone: (503) 224-6440
Attorneys for Applicants Amicus-Intervenors

---

[6] Many of the issues articulated in the intervention subsections also support and explain the reasons why Applicants seek amicus status in this matter. The Applicants' interests in their permits, the impact of this case on their permits and livelihoods, and the lack of representation of their interests given the potential impacts to their interests all are reasons for the Applicants' request for amicus status in the liability phase of this matter.

\\DCASPDX-
IS1\DMNFSL1\DCAPDX\408389\1\DCAPDX_N408389_V1_MEMO
RANDUM_IN_SUPPORT_OF_MOTION_TO_INTERVENE_(LAKE
VIEW).DOC