IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

OREGON NATURAL DESERT                    Case No. 06-523-HO
ASSOCIATION, et al.,
                                         ORDER
          Plaintiffs,

     v.

SHIRLEY GAMMON, et al.,

          Defendants.


     The complaint alleges nine claims under the National

Environmental Policy Act (NEPA), the Federal Land Policy and

Management Act (FLPMA), the Public Rangelands Improvement Act

(PRIA) the Taylor Grazing Act of 1934 (TGA) and the

Administrative Procedure Act (APA).  The claims arise from the

Bureau of Land Management's (BLM) Records of Decision (RODs)

adopting the Lakeview Resource Management Plan (Lakeview RMP) and

the Beaty Butte Allotment Management Plan (Beaty Butte AMP), and

1 - ORDER

corresponding environmental impact statements (EISs).  Plaintiffs
seek declaratory and injunctive relief.  Plaintiffs and
defendants filed cross motions for summary judgment.

<u>Legal Framework</u>

NEPA and Council on Environmental Quality (CEQ) regulations
require that an EIS contain a detailed discussion of adverse
impacts of a proposed action, and evaluation of reasonable
alternatives.  42 U.S.C. § 4332(2); 40 C.F.R. § 1502.14.

FLPMA requires that the Secretary of Interior take the
following actions, among others: prepare and maintain a current
inventory of public lands and their resource values; develop,
maintain and revise land use plans "which provide by tracts or
areas for the use of the public lands . . . regardless of whether
such lands previously have been classified, withdrawn, set aside,
or otherwise designated for one or more uses[;]" "use and observe
the principles of multiple use and sustained yield" in the
development and revision of land use plans; "rely, to the extent
it is available, on the inventory of the public lands, their
resources, and other values . . ." in the development and
revision of land use plans; "manage the public lands under
principles of multiple use and sustained yield, in accordance
with land use plans[;]" and "take any action necessary to prevent
unnecessary or undue degradation of the lands."  43 U.S.C. §
1711(a); 43 U.S.C. § 1712(a), (c)(1) & (4); 43 U.S.C. § 1732(a) &

2 - ORDER

(b).

FLPMA also required the Secretary, by 1991, to review all roadless areas of 5,000 acres or more on public lands identified during the inventory as having wilderness characteristics described in the Wilderness Act of 1964 (wilderness study areas (WSAs)), and "from time to time report to the President [a] recommendation as to the suitability or nonsuitability of each such area . . . for preservation as wilderness . . ."  43 U.S.C. § 1782(a).

The PRIA requires that the Secretary, as part of the FLMPA inventory process, "develop (where necessary) and maintain on a continuing basis thereafter, an inventory of range conditions and record of trends of range conditions," and "categorize or identify such lands on the basis of the range conditions and trends thereof as [the Secretary] deem[s] appropriate."  43 U.S.C. § 1903(a).

The TGA authorizes the Secretary, in his discretion, to establish and modify the boundaries of grazing districts, of certain lands which in the opinion of the Secretary are "chiefly valuable" for grazing or raising forage crops.  43 U.S.C. § 315. The TGA further authorizes the Secretary, in his discretion, to examine or classify certain lands within a grazing district

> which are more valuable or suitable for the production
> of agricultural crops than for the production of native
> grasses and forage plants, or more valuable or suitable
> for any other use than for the use provided for under

> this subchapter or proper for acquisition in
> satisfaction of any outstanding lieu, exchange or
> script[1] rights or land grant . . .

43 U.S.C. § 315f.

The classification of public lands is subject to review in the land use planning process set forth in FLPMA, and the Secretary may modify or terminate land classifications consistent with land use plans.  43 U.S.C. § 1712(d).

"[F]inal agency action for which there is no other adequate remedy in a court [is] subject to judicial review."  5 U.S.C. § 704.  Agency action includes "the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act."  5 U.S.C. § 551(13).  A reviewing court shall compel agency action unlawfully withheld or unreasonably delayed, and hold unlawful and set aside agency action, findings, and conclusions found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law.  5 U.S.C. § 706.

## Factual Background

The November 2003 Lakeview RMP and ROD provides overall management direction of all resources on 3.2 million acres of BLM-administered land in Lake and Harney Counties, Oregon, and on 2,172 acres in Northern California and Nevada.  Within the

---

[1]"So in original.  Probably should be 'scrip'."  43 U.S.C. § 315f, n. 1.

4 - ORDER

boundaries of the Lakeview Resource Area, the Beaty Butte
Allotment covers more than 500,000 acres in Lake County and
southwestern Harney County, Oregon.  The June 1998 Beaty Butte
AMP provides a rest-rotation grazing system as a means of
managing livestock distribution and use within the allotment,
while protecting other resource values.  Tab 1-17 (Beaty Butte
AMP abstract).

In April 2005, plaintiff Oregon Natural Desert Association
(ONDA) presented the BLM with an inventory of proposed wilderness
areas in the Lakeview Resource Area.

<u>Discussion</u>

The court may direct that summary judgment be granted to
either party based upon review of the administrative record.  <u>Pit
River Tribe v. United States Forest Svc.</u>, 469 F.3d 768, 778 (9th
Cir. 2006).

I.  <u>Bars to Judicial Review</u>

Plaintiffs' eighth, ninth, and "alternative" fifth claims
against the Beauty Butte AMP are time-barred.  A six year
limitations period applies to claims for judicial review of final
agency action under the APA.  <u>Sierra Club v. Penfold</u>, 857 F.2d
1307, 1315 (9th Cir. 1988); 28 U.S.C. § 2401(a).  A right of
action accrues when an agency action becomes final.  <u>Police
Automatic Weapons Svcs., Inc. v. Benson</u>, 837 F. Supp. 1070, 1074
(D. Or. 1993).  The Beaty Butte AMP ROD became final on April 12,

5 - ORDER

1999, when the ALJ denied the request for stay.   43 C.F.R. §
4.21(c).   Plaintiffs commenced this action on April 19, 2006,
outside the limitations period.   Plaintiffs ask the court to toll
the limitations period because the Department of Interior delayed
processing plaintiffs' administrative appeal, the BLM continues
to violate law, and the ruling on plaintiffs' administrative
appeal constitutes an "overt act" within the limitations period.
These savings devices or doctrines are inapplicable in the
circumstances of this case.   Administrative delays did not impede
plaintiffs' ability to timely file an action for district court
review.   Idaho Watersheds Project v. Hahn, 307 F.3d 815, 825 (9th
Cir. 2002).

      Because claims against the site-specific Beaty Butte AMP ROD
are time-barred, grazing-related claims against the Lakeview RMP
ROD under FLPMA, PRIA and TGA are unripe.   Ohio Forestry Ass'n v.
Sierra Club, 523 U.S. 726, 733 (1988); Wilderness Society v.
Thomas, 188 F.3d 1130, 1133 (9th Cir. 1999).   Unripe claims
include plaintiffs' second, fifth and sixth claims, and the
portion of plaintiffs' seventh claim that involves land allocated
to grazing.

      Congress did not impose requirements for timing, methodology
or content of the Secretary's inventory of lands, resource
values, trends and conditions.   Nor did Congress specify how the
Secretary should manage lands and prepare resource plans under

6 - ORDER

principles of multiple use and sustained yield, and prevent undue
and unnecessary degradation of lands.  Rather, Congress conferred
broad discretion upon the Secretary to determine how best to
achieve these mandates.  Similarly, Congress authorized, but did
not require, the Secretary to reclassify lands.  Because the
Secretary has broad discretion over such matters, claims that the
Secretary failed to prepare and maintain current inventories,
prepare land use plans and manage lands under principles of
multiple use and sustained yield, prevent undue and unnecessary
degradation of lands, and reclassify lands, are not susceptible
to judicial enforcement.  See <u>Norton v. Southern Utah Wilderness
Alliance (SUWA)</u>, 542 U.S. 55, 66 (2004); see also <u>ONDA v.
Rasmussen</u>, 451 F. Supp. 2d 1202, 1215 (D. Or. 2006).  Plaintiffs'
second, fifth, sixth, seventh and ninth claims for violations of
FLPMA, PRIA and TGA are not reviewable.

II.  <u>NEPA Claims</u>

     A.  First Claim

     Plaintiffs allege that the BLM refused to take a hard look
at the environmental consequences and cumulative impacts of the
Lakeview RMP on wilderness values, and refused to consider
significant new circumstances and information regarding the
wilderness resource and whether decades-old wilderness inventory
information is inaccurate.  Complaint, ¶¶ 76-79.  Plaintiffs
argue that the BLM failed to consider impacts of the Lakeview RMP

on wilderness values outside of existing WSAs and 3,139 acres acquired by the BLM in 1992, for which the BLM prepared a wilderness inventory according to its protocols.

BLM published a final EIS for wilderness recommendations in 1989. Tab 6-239. The BLM based its recommendations on 1980 reports of a wilderness inventory that commenced in 1978, and on subsequent wilderness "reviews." Tab 6-256. The BLM also prepared "wilderness inventory evaluations" for four parcels of land acquired after the original wilderness inventory. Tabs 2-14-17.

Because land and resource inventories do not change the management or use of public lands, 43 U.S.C. § 1711(a), and the BLM has discretion as to how to meet its continuing inventory obligations and whether to reclassify lands, the BLM did not violate NEPA by issuing the Lakeview RMP without updating its land and resource inventories "on more than 2.7 million acres of public land outside of existing WSAs"[2] in the manner preferred by plaintiffs. See ONDA v. BLM, 03-1017-JE, 2005 WL 711663, *4 (D. Or.); but see Rasmussen, 451 F. Supp. 2d at 1213 (finding NEPA violation for failure to update wilderness inventory in case challenging site-specific action).

Plaintiffs' briefing does not address a claim that the BLM violated NEPA by failing to prepare a supplemental NEPA document

_____

[2]Pls' Memo. at 27.

in response to ONDA's 2005 wilderness inventory.  To the extent
the first claim for relief may state such a claim, the court
finds the claim abandoned, and without merit.  The BLM considered
ONDA's post-decision wilderness inventory and found no areas
where all of the wilderness criteria are met.  ECF/CM [#78] (ex.
3, part 1 at 20).  The court is deferential to the BLM's findings
regarding wilderness criteria.

     B.  Third Claim

     Plaintiffs allege that the BLM failed to consider a
reasonable range of alternative grazing allocations and forage
levels in the RMP planning area.  An EIS must include reasonable
alternatives to the proposed action.  42 U.S.C. §
4332(2)(C)(iii); 40 C.F.R. § 1502.14.  Having previously
exercised the discretion conferred by Congress to determine that
lands are chiefly valuable for grazing, the Secretary did not
violate NEPA by failing to consider (other than alternative E)
alternatives that would reallocate these lands to other uses for
the duration of the RMP.[3]  The decision to regulate grazing by
authorization, rather than allocation, is reasonable considering
the stated purpose and need of the RMP/EIS to provide a
comprehensive framework for managing public land in the planning
area, and to meet FLPMA's mandate that public land be managed for

---

     [3]Alternative E would eliminate livestock grazing.  Tab 2-26,
EIS 3-38.

multiple use and sustained yield.  Tab 2-26, EIS at 1-1.

Nor do plaintiffs demonstrate that the range of alternative forage levels considered by the BLM is unreasonable. Alternatives A & D provide for 108,234 animal unit months (AUM) average licensed use with 164,128 AUM full permitted use. Alternative B provides for 180,541 AUM full permitted use. Alternative C provides for 86,587 AUM full permitted use. Alternative E excludes all grazing.  Tab 2-26, EIS 3-39-40.

Plaintiffs first note that two alternatives would lower the current full permitted use level.  Plaintiffs cite to no authority that the range of alternatives is unreasonable for this reason, however.  Next, plaintiffs argue that the range of alternatives is unreasonable because the BLM cannot adjust use levels through AMPs, rangeland health assessments, permits, or other planning documents.  Plaintiffs rely on 43 C.F.R. § 4100.0-8, which states that "[l]and use plans shall establish allowable resource uses, related levels of production or use to be maintained, [and] areas of use . . ."  Plans also set forth "program constraints and general management practices needed to achieve management objectives."  Id.

The regulation applies to plans, not EISs.  The plan sets forth an allowable use (grazing), levels of use to be maintained (108,234 AUM average licensed use or 164,128 AUM full permitted use), and areas allocated to grazing.  Full permitted use levels

10 - ORDER

may change through assessments of individual allotments.  Tab 2-
26, EIS 3-38.  As plaintiffs read 43 C.F.R. § 4100.0-8, the BLM
is required to choose and maintain a single forage level for the
next twenty years, and ensure that the chosen level of forage is
actually consumed.  The court finds that Section 4100.0-8 does
not prohibit the BLM's flexible approach.

    Next, plaintiffs write, "the amount of forage allocated to
domestic livestock grazing remains the same under the Lakeview
RMP as under the decades-old land use plans it replaces," which
the BLM acknowledged were weak and obsolete.  Pls' Memo. at 37.
The complaint that the BLM selected the wrong forage level has
little relevance to the adequacy of the range of alternatives
considered.

    Next, plaintiffs fault the BLM for deferring forage level
decisions to the AMP process, because the BLM has prepared only
20 AMPs for 122 allotments in the Lakeview District, and the BLM
may never complete additional AMPs.  The BLM considered four full
permitted use levels in the EIS for analytical purposes, and
chose one full permitted use level for inclusion in the RMP.  Tab
2-26, EIS at 3-38-40; Tab 2-33, RMP at 52.  The BLM further
provided in the EIS and RMP that it will maintain that grazing
level until evaluation or monitoring data or rangeland health
assessments identify a need for adjustments to meet management
objections.  Tab 2-26, EIS 3-38; Tab 2-33, RMP at 52.  AMPs are

11 - ORDER

not the only relevant documents.  Others include agreements, decisions, terms and conditions of grazing use authorizations, rangeland health assessments, grazing management guidelines, allotment evaluations, watershed analyses, biological opinions, and revisions.  Tab 2-26, EIS 3-38; Tab 2-33, RMP at 52.  The BLM's flexible approach to grazing management is appropriate considering the vast size of the planning area and the duration of the RMP.

Finally, plaintiffs argue that because FLPMA directs the BLM to manage for multiple use and sustained yield, and to prevent unnecessary or undue degradation and permanent impairment to the public lands, "it necessarily follows that a 'hard look' at reasonable alternatives in the RMP NEPA process should include at least . . . some alternatives that would reduce forage allocated to domestic livestock." Pls' Brief at 39.  As noted, two of the four full permitted use levels were reduced from the present full permitted use level - zero, and 86,587 AUM.  Plaintiffs seem to complain that the BLM should have considered additional alternative grazing levels.  Plaintiffs do not explain what additional grazing levels, or what number of additional grazing levels, would comprise a reasonable range of alternatives.  The court finds no NEPA violation arising from the range of grazing levels considered by the BLM.

C.  Fourth Claim

12 - ORDER

Plaintiffs argue that the BLM failed to consider a reasonable range of alternatives in the Lakeview RMP/EIS with respect to areas closed to OHV use.  Plaintiffs complain that the BLM did not consider closing existing routes within existing WSAs, or closing "ways" on additional non-WSA roadless areas with wilderness values identified by plaintiffs in their wilderness inventory.  The wilderness inventory post-dates the EIS by approximately two years, and the inventory would not have been binding on the BLM in any event.  Plaintiffs may be correct that the alternatives consider closing only .3%, .6% and 1.3% of the planning area to OHV use.  However, the BLM also considered a variety of OHV use restrictions, including limitations to use on designated or existing roads and trails in different areas.  Tab 2-26, EIS 4-129, Table 4-5.  These limitations are set forth in detail, with map references, at Tab 2-26, RMP EIS 3-99-101. Considering the vast size of the planning area and the variety of competing uses for various locations within the planning area, the court cannot say from plaintiffs' untimely wilderness inventory that the range of alternatives with respect to OHV use is unreasonable.  The court defers to the expertise of the BLM. See ONDA v. BLM, Civ. No. 03-1017-JE, 2005 WL 711663, *3 (D. Or.); ONDA v. Shuford, Civ. No. 06-242-AA, 2007 WL 1695162 (D. Or.).

Plaintiffs claims are time-barred, nonjusticiable, or

13 - ORDER

amenable to summary judgment on the merits in favor of
defendants.

<u>Conclusion</u>

Based on the foregoing, plaintiffs' motion for summary
judgment [#28] is denied; defendants' cross motion for summary
judgment [#44] is granted.  This action is dismissed.

IT IS SO ORDERED.

DATED this  28th  day of June, 2007.


   s/ Michael R. Hogan
United States District Judge

14 - ORDER