FILED '10 NOV 18 07:44 USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| OREGON NATURAL DESERT ASS'N *et al.*, | Case No. 06-CV-523-HO |
| Plaintiffs, | ~~[PROPOSED]~~ ORDER |
| v. | |
| SHIRLEY GAMMON, Lakeview District Manager, BLM, *et al.*, | |
| Defendants, | |
| and | |
| LAIRD RANCH, LLC *et al.*, | |
| Amici on the Merits & Intervenors on Remedy. | |

Hogan, Judge.

The Court has before it the parties' Joint Motion for Voluntary Dismissal, which seeks voluntary dismissal under Fed. R. Civ. P. 41(a)(2). Having reviewed and considered the motion, and good cause appearing, the Court concludes that said Motion for Voluntary Dismissal is appropriate under Fed. R. Civ. P. 41(a)(2) and the facts presented. Accordingly,

IT IS ORDERED that the parties' Motion for Voluntary Dismissal is hereby GRANTED; and

IT IS FURTHER ORDERED that the Settlement Agreement executed by the parties is hereby incorporated into this Order and is included as an attachment hereto; and

IT IS FURTHER ORDERED that this Court shall have continuing jurisdiction to enforce this Order and the terms of the Settlement Agreement incorporated herein consistent with the terms of that agreement; and

IT IS FURTHER ORDERED that this case is hereby DISMISSED.

IT IS SO ORDERED.

DATED this 17th day of Nov., 2010

_____
MICHAEL R. HOGAN
United States District Judge

## SETTLEMENT AGREEMENT

WHEREAS, Plaintiffs/Appellants, Oregon Natural Desert Association, the Committee for the High Desert, and Western Watersheds Project (collectively, ONDA), and the Bureau of Land Management (BLM) have litigated, through the Ninth Circuit Court of Appeals, the BLM's Southeastern Oregon Resource Management Plan (RMP) in ONDA v. BLM, No. 05-35931 (9th Cir.). The appellate court ruled that wilderness characteristics are among the resources the BLM can manage under the Federal Land Policy and Management Act, that the BLM must address whether and to what extent wilderness values are present in the planning area outside of Wilderness Study Areas (WSA), and if so, how the RMP should treat land with such values. Moreover, according to the court's decision, the BLM must consider closures of significant portions of the land it manages, including lands with wilderness values, to off-road vehicles (ORV). The court did not reach other issues raised by plaintiffs. The court vacated the Record of Decision (ROD) and remanded the case to the BLM. The BLM filed a petition for panel rehearing to seek reconsideration of the court's remedy barring implementation of the RMP. The matter has been stayed during settlement negotiations;

WHEREAS, Plaintiff/Appellant, Oregon Natural Desert Association, the Oregon Natural Resources Council Fund, and Northwest Environmental Defense Center (collectively, ONDA) and the BLM have litigated, in the District Court of Oregon, the BLM's Lakeview RMP. The district court upheld the Lakeview RMP against all challenges. Plaintiffs appealed that decision to the Ninth Circuit Court of Appeals. The appeal, ONDA v. Gammon, No. 07-35728 (9th Cir.), has been stayed pending resolution of ONDA v. BLM, No. 05-35931 (9th Cir.) and then to allow for settlement negotiations;

WHEREAS, the parties to these actions, the BLM and ONDA, hereby agree to the following Settlement Agreement (Agreement) to resolve these actions informally, solely as a compromise, and to avoid the need for further litigation before the courts;

NOW THEREFORE, the parties agree to settlement in this manner, with terms and conditions as follows:

### I. SCOPE OF AGREEMENT

**1.** This Agreement shall constitute a complete and final settlement of all plaintiffs/appellants' claims alleged in the above-described cases against defendants.

**2.** This Agreement in no way affects or relieves any party of its responsibility to comply with any applicable federal, state, and local law or regulation.

**3.** This Agreement in no way affects the rights of the United States as against any person or entity not a party thereto.

**4.** This Agreement is for the purpose of litigation and nothing in this Agreement shall be deemed a precedent or constitute an admission of fact or law by any party. This

1

Agreement shall not be used or admitted in any proceeding against a party over the objection of that party.

    **5.**    It is hereby expressly understood and agreed that this Agreement was jointly drafted by the parties. Accordingly, the parties hereby agree that any and all rules of construction to the effect that ambiguity is construed against the drafting party shall be inapplicable in any dispute concerning the terms, meaning, or interpretation of this Agreement.

    **6.**    This Agreement shall be governed by and construed under federal law.

    **7.**    Nothing in this Agreement shall be construed to make any other person or entity not executing this Agreement a third-party beneficiary to this Agreement.

    **8.**    This Agreement contains all of the agreements between the parties, and is intended to be and is the final and sole agreement between the parties concerning the complete and final resolution of ONDA's causes of action in these cases. The parties agree that any other prior or contemporaneous representations or understandings not explicitly contained in this Agreement, whether written or oral, are of no further legal or equitable force or effect. Any subsequent modifications to this Agreement must be in writing, and must be signed and executed by the parties.

## II.    DEFINITIONS

    **9.**    "Wilderness character" describes a unit of roadless BLM-administered land that is at least five thousand acres in size, or is of sufficient size as to make practicable its preservation and use in an unimpaired condition, and that possesses the minimum wilderness characteristics, as enumerated by the Wilderness Act, 16 U.S.C. § 1131(c)(1)-(4), and incorporated into the Federal Land Policy and Management Act (FLPMA) and the BLM's Land Use Planning Handbook (H-1601-1)—1) naturalness (the area generally appears to be affected primarily by the forces of nature, with the imprint of man's work substantially unnoticeable), and 2) outstanding opportunities for solitude or a primitive and unconfined type of recreation.

    **10.**    "ONDA," for purposes of this settlement only, includes the Oregon Natural Desert Association, the Committee for the High Desert, Western Watersheds Project, the Oregon Natural Resources Council Fund, and Northwest Environmental Defense Center.

    **11.**    "Project" for purposes of this settlement only, is a newly proposed or unimplemented surface-disturbing activity, and specifically excludes the BLM's authorization of livestock grazing.

    **12.**    "Inventory update" for purposes of this settlement only, is limited to an update of resource information related to wilderness character by the BLM, pursuant to 43 U.S.C. § 1711, for the planning areas.

### III. SPECIFIC PROVISIONS

    **13.**    The BLM shall initiate resource management plan (RMP) amendments for both the Southeastern Oregon and Lakeview RMPs.

    **14.**    The two RMP amendments shall address, for each planning area, wilderness character, off-road vehicle (ORV) use, and grazing management. Specifically, the BLM shall a) complete inventory updates for the planning areas, b) consider information from the inventory updates in the "affected environment," "alternatives," and "analysis" sections of the NEPA documents supporting amendment of each plan; c) develop a full range of allocation alternatives with respect to ORV use, travel, and transportation, that includes both effects on, and protection of, wilderness character; and d) develop grazing management alternative(s) that provide for both voluntary grazing permit/lease relinquishment processes and the identification of areas no longer available for grazing use.

    **15.**    Except for project limitations described in this Agreement, the BLM shall continue to manage under the direction of the RODs for the Southeastern Oregon and Lakeview RMPs until the BLM completes the amendment for each RMP.

    **16.**    The BLM Oregon State Office agrees to place a high priority on these planning processes within its statewide budgeting process, and shall, contingent upon sufficient funding, complete the RMP amendments as quickly as practicable.

    **17.**    The BLM Oregon State Office shall issue State Director Guidance for the preparation of the Southeastern Oregon and Lakeview RMP amendments that includes the direction to use information from inventory updates to support the amendments.

    **18.**    Subject to valid existing rights, until it completes the RMP amendments, the BLM shall not implement any projects in the respective RMP planning areas that fall within either a) an inventory unit determined by BLM to possess wilderness character, where such action would be deemed by BLM to diminish the size or cause the entire BLM inventory unit to no longer meet the criteria for wilderness character, or b) a unit identified in ONDA's April 1, 2005 or February 6, 2004 citizen inventory reports as having wilderness character, but where BLM has not yet completed its inventory update, where the action would be deemed by BLM to diminish the size or cause the entire ONDA inventory unit to no longer meet the criteria for wilderness character.

    **19.**    Until the BLM has completed an RMP amendment, if a project is proposed or scheduled for implementation in either of the respective planning areas and would be in an area that BLM has found to possess wilderness character, the BLM will analyze the effects on wilderness character through each project's NEPA process. Such analysis shall include an alternative that analyzes both mitigation and protection of any BLM-identified wilderness character that exists within the project area. Consistent with paragraph 18, until the BLM has completed an RMP amendment, the BLM shall not implement any project if its analysis determines that the effects of the project would cause an area with BLM-identified wilderness character to no longer meet the minimum wilderness character criteria.

**20.** Until the BLM has completed an RMP amendment, where the BLM has not completed its inventory update, the BLM shall update the inventory for units in areas affected by proposed new activity plans, leases, or other projects that may cause surface disturbance or result in a permanent development. Where inventory updates have already been completed, BLM will review information from any subsequent BLM field validation or photographic documentation of such areas for the possibility of new information that may warrant reconsideration of prior inventory conclusions.

**21.** The BLM shall consider citizen-provided information regarding wilderness character when it conducts inventory updates or, where it has already completed such inventory updates, to determine whether such information warrants reassessing prior wilderness character inventories.

**22.** Upon completion of the inventory updates, the BLM shall provide its findings regarding the presence or absence of wilderness character to those persons or entities that supplied the BLM information regarding wilderness character, or similar values, at least thirty days prior to finalizing any project proposals in the inventory unit analyzed. In addition, the BLM shall make its findings publicly available, at a minimum, upon request.

**23.** To ensure maximum consistency among the BLM Districts and Field Offices, the BLM will follow up the "calibration" workshop it held for personnel involved in inventory updates with one or more field calibration sessions that shall be open to members of ONDA, any interested public, and possible invited experts.

**24.** In the event the BLM Washington Office issues relevant national guidance pertaining to sections 201 and 202 of FLPMA prior to the BLM signing a Record of Decision for either the Lakeview or the Southeastern Oregon RMP amendments, the BLM agrees to adjust the relevant planning process to comport with such guidance, to the extent feasible.

**25.** Corridor 7-24, established through BLM's West Wide Energy Corridors Record of Decision, dated January 14, 2009, designating energy corridors in Oregon, shall be subject to the management direction adopted upon completion of the Lakeview and Southeastern Oregon RMP amendments.

**26.** The BLM Oregon State Office shall issue State Director Guidance for the preparation of the Southeastern Oregon and Lakeview RMP amendments that provides consistent direction to both the Lakeview and Vale Districts regarding management of ORV, travel, and transportation. Such guidance shall include the following:

a) the BLM shall complete inventory updates for the entire planning area prior to developing alternatives for and analyzing the effects of ORV, travel, and transportation management in the two RMP amendments;

b) the BLM shall consider a full range of alternatives that varies amounts of areas falling within all three ORV allocation types (open, limited, and closed) based on a balancing of resource uses and values;

4

    c) the BLM shall follow current BLM national guidance with respect to designating open, limited, and closed areas, pursuant to 43 C.F.R. §§ 8342.1 and 8342.2(a). The BLM shall consider an alternative designating existing wilderness study areas (WSAs) and non-WSA areas with BLM-identified wilderness character as limited to roads and trails existing either at the time the area became a WSA or when non-WSA lands were recognized as possessing wilderness character. In addition, the BLM shall consider an alternative that would designate WSAs and non-WSA areas with BLM-identified wilderness character as "closed" to ORV use. The RMP amendments may allow for the BLM to make future use designations for a WSA in the event it is released from study.

27.    The BLM shall consider an alternative in both the Lakeview and Southeastern Oregon RMP amendments that will close allotments or pastures either for the duration of the plan or temporarily where existing grazing management practices or levels of grazing use on public lands are significant factors in the allotment or pasture failing to achieve the standards for rangeland health.

28.    The BLM Oregon State Office shall issue State Director Guidance for the preparation of the Southeastern Oregon and Lakeview RMP amendments that provides consistent direction to both the Lakeview and Vale Districts, including the direction to analyze, through at least two alternatives, a process that allows for and describes conditions under which, for the duration of each plan, the BLM would no longer authorize livestock grazing within a grazing allotment, or portions thereof, when either a grazing permit or lease is voluntarily relinquished.

29.    The two RMP amendments each shall include at least two alternatives that require the BLM to accept the voluntary relinquishment of any valid existing permit or lease authorizing livestock grazing on public land, as set out below. In particular, the alternatives analysis shall consider the voluntary relinquishment of permits or leases (or portions thereof) located on or within public lands within (1) the National Landscape Conservation System (NLCS) alone and (2) the NLCS in combination with public lands within Areas of Critical Environmental Concern, as that term is defined by the FLPMA, designated Research Natural Areas, as that term is referred to in BLM Manual 1613, Areas of Critical Environmental Concern, and BLM's planning handbook (H-1601-1, Appendix C, III.B.4), areas that BLM has determined have wilderness character, and areas with designated critical habitat for a species listed under the Endangered Species Act.

30.

    a) The relinquishment structure that BLM will analyze in the alternatives outlined in paragraph 29 for allotments with one permittee per allotment will provide that once a permit or lease has been completely relinquished, the BLM shall terminate the permit or lease, or portion thereof, and will ensure an end to livestock grazing on the public lands covered by the permit or lease and so relinquished, for the duration of the plan.

    b) For allotments with one permittee per allotment, the alternatives will provide that once a permit or lease has been partially relinquished, the BLM shall appropriately

modify the permit or lease and ensure that livestock grazing is either eliminated or appropriately reduced on the public lands covered by the permit and subject to the partial relinquishment, for the duration of the plan. With respect to partial relinquishments, BLM will not allow livestock grazing to exceed the permitted use established for these public lands after the partial relinquishment, for the duration of the plan.

    c) Due to the complexities inherent with relinquishments on common-allotments, BLM will address the structure of such relinquishments for the alternatives during the alternatives development process under NEPA.

**31.** Nothing in this Agreement or the alternatives to be analyzed shall preclude the BLM from accepting the relinquishment of any valid existing permit or lease outside areas identified for closure, at the discretion of the relevant District Manager or Field Manager.

### IV. SAVINGS PROVISIONS

**32.** Nothing in the terms of this Agreement shall be construed to limit or modify the authority accorded to the BLM by FLPMA, any other statute or regulation, or by general principles of administrative law, both to update public land management policy, and to meet FLPMA's public lands management objectives over time.

**33.** The obligations imposed on the BLM under this Agreement can only be undertaken using appropriated funds. No provision of this Agreement shall be interpreted as or constitute a commitment or requirement that the BLM or the United States obligate or pay funds in contravention of the Anti-Deficiency Act, 31 U.S.C. § 1341, or any other applicable federal statute.

### V. EFFECTIVENESS OF AGREEMENT, REMEDIES, RELEASES, AND TERMINATION

**34.** This Agreement and the obligations under it become effective only upon full completion of all of the following events: 1) pursuant to the parties' joint motion in ONDA v. BLM, No. 05-35931, the Ninth Circuit issues an amended decision in that case which omits the directive to BLM to set aside the Record of Decision for the Southeastern Oregon RMP and permits BLM to continue to manage under the direction of the Record of Decision for the Southeastern Oregon RMP until the BLM completes the amendment for that RMP, as specified in paragraph 15, 2) pursuant to the parties' joint motion in ONDA v. BLM, No. 05-35931, the Ninth Circuit issues an order that remands the case back to the district court, 3) pursuant to the parties' joint motion, the district court in 05-35931 issues an order that incorporates the terms of this Agreement in the dismissal order and dismisses the case, while retaining jurisdiction for the sole purpose of enforcing this Agreement, 4) pursuant to the parties' stipulation in ONDA v. Gammon, No. 07-35728, the Ninth Circuit issues an order granting the stipulated dismissal of that appeal without prejudice to reinstatement, and 5) pursuant to the parties' joint motion, the district court in 07-35728 issues an order that incorporates the terms of this Agreement in the

dismissal order and dismisses the case, while retaining jurisdiction for the sole purpose of enforcing this Agreement.

**35.** The exclusive remedy for claims of material breach of this agreement is a motion to enforce the agreement, brought in the appropriate district court. However, at least 30 days prior to bringing any action to enforce this Agreement, the party contemplating the action must bring its dispute to the attention of the other party, in writing, and both parties must make a good faith effort to resolve the dispute informally within 30 days thereafter. If the dispute cannot be resolved in this manner, either party may invoke the retained jurisdiction of the district court by filing an appropriate pleading before one of the district court judges. In no case shall a party file such an application for relief before both district court judges. The parties shall make best efforts to agree as to which district court judge should consider the particular dispute. In the absence of agreement, the question of which judge should consider the dispute shall be submitted to the district court for its determination. The parties understand that the district court's review of any action related to this settlement agreement will be governed by any relevant standards of review set forth in the Administrative Procedure Act, 5 U.S.C. § 551 et seq., for judicial review of federal agency actions. The parties agree not to seek to invoke the contempt powers of the district court in aid of enforcement of this Agreement. Consistent with paragraph 37 of this Agreement, any challenge to the validity of the RODs for the Plan Amendments, including any challenge to the sufficiency of the NEPA analyses completed, shall be made in a separate action subject to all available defenses.

**36.** ONDA hereby agrees that this settlement is in full satisfaction of all of its claims in <u>ONDA v. BLM</u> and <u>ONDA v. Gammon</u>, and when it becomes effective pursuant to paragraph 34 of this Agreement shall serve as a release of all claims in both cases. ONDA further releases, discharges, and covenants not to assert (by way of the commencement of an action, the joinder of BLM in an existing action, or in any other fashion) any and all claims, causes of action, suits or demands of any kind whatsoever in law or in equity which they may have had, or may hereafter have, against the United States, including the BLM, based upon matters concerning either the Southeastern Oregon or Lakeview RMP, which were asserted or could have been asserted by Plaintiffs in the complaints filed in <u>ONDA v. BLM</u>, No. 05-35931 (9th Cir.), or <u>ONDA v. Gammon</u>, No. 07-35728 (9th Cir.), respectively.

**37.** The parties' obligations under this Agreement shall terminate when the BLM signs RODs for both the Southeastern Oregon RMP amendment and the Lakeview RMP amendment. More specifically, the BLM's obligations, as articulated in this Agreement with respect to the Southeastern Oregon planning area, shall terminate when the BLM signs a ROD for the Southeastern Oregon RMP amendment, and the BLM's obligations, as articulated in this Agreement with respect to the Lakeview planning area, shall terminate when the BLM signs a ROD for the Lakeview RMP amendment.

## VI.    ATTORNEY FEES AND COSTS

**38.** ONDA claims entitlement to attorneys fees and expenses pursuant to the Equal Access to Justice Act, 28 U.S.C. § 2412(d) et seq. Without any admission of fact or law, BLM agrees to settle ONDA's claim for attorneys fees and expenses in both <u>ONDA v. BLM</u> and <u>ONDA v. Gammon</u>, in order to avoid further litigation. In settlement of these claims, the BLM shall pay $260,956.70 to ONDA by electronic funds transfer.

ONDA agrees to accept payment of $260,956.70 in full satisfaction of any and all claims for attorneys fees, costs and expenses to which ONDA asserts that it is entitled in these matters. Provided, however, that ONDA is not barred by this or any other provision of this Agreement from seeking attorney fees, costs and expenses incurred to enforce the terms of this Agreement, subject, however, to all available defenses, including that ONDA is not entitled to attorneys fees, costs or expenses related to enforcement of the Agreement.

Following the district courts' orders dismissing the cases, as specified in paragraph 34, ONDA's counsel shall provide the following information to counsel for BLM:

> Bank name
> Bank address
> Routing number
> Account number
> Name of Account
> Federal Taxpayer Identification number

BLM will immediately initiate the process for securing payment of the above referenced sum and BLM's counsel will provide documentation (via letter or email) to ONDA's counsel advising of the initiation of that process. The BLM shall make its best effort to transmit payment to ONDA no later than thirty days after ONDA provides the information listed above. The BLM will provide notice by email to ONDA's counsel that the electronic funds transfer has been made. Payment of this sum by the BLM shall constitute satisfaction in full of any claim for costs of suit or attorney fees arising out of these actions.

## VII.  RECIPIENTS OF NOTIFICATION

**39.**  Any notices required or provided for by this Agreement shall be in writing, effective upon receipt, and sent to the following:

For Plaintiffs/Appellants:

Peter M. Lacy
Senior Attorney
Oregon Natural Desert Association
917 SW Oak Street, Suite 408
Portland, OR 97205
lacy@onda.org

Laurence J. Lucas
P.O. Box 1342
Boise, ID 83701
llucas@advocateswest.org

8

ATTACHMENT A
Page 8 of 10

For Defendants/Appellees:

David C. Shilton
Attorney, Appellate Section
United States Department of Justice
Environment & Natural Resources Division
P.O. Box 23795
Washington, DC 20026-3795
David.Shilton@usdoj.gov

Stephen J. Odell
Assistant U.S. Attorney
1000 S.W. Third Avenue, Suite 600
Portland, OR 97204-2902
Steve.odell@usdoj.gov

Michael Schoessler
Department of the Interior
Pacific Northwest Office of the Regional Solicitor
805 SW Broadway, Suite 600
Portland, OR 97205
Michael.Schoessler@sol.doi.gov

Or such other person as either party may subsequently identify in writing to the other party.

## VIII. SIGNATURE OF PARTIES

40. The undersigned representatives of each party certify that they are fully authorized to consent to the terms and conditions of this Agreement. Signature on a counterpart or authorization of an electronic signature shall constitute a valid signature.

Date: 6-7-10

Edward W. Shepard
State Director Oregon/Washington

Brent Fenty
Oregon Natural Desert Association

s/ Jon Marvel

Jon Marvel
Western Watersheds Project

9

ATTACHMENT A
Page 9 of 10

s/ Steve Jakubowics
Steve Jakubowics
Committee for the High Desert


s/ Doug Heiken
Doug Heiken
Oregon Wild
(formerly Oregon Natural Resources Council)

s/ Mark Riskedahl
Mark Riskedahl
Northwest Environmental Defense Center